IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Robert E. Shaver,**

    **Plaintiff,**

v.                                           Case No. 11-1247-JWL

**New England Life Insurance Company
et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this lawsuit against defendants asserting employment-related claims arising out of his employment in the Wichita, Kansas office of New England Life Insurance Company. Specifically, plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Kansas Wage Payment Act, K.S.A. § 44-313 et seq., and a state law claim of breach of contract. This matter is presently before the court on defendants' motion to dismiss or stay pending mandatory arbitration (doc. 6). As explained below, the court grants the motion to stay proceedings and directs the parties to proceed to arbitration on plaintiff's claims.

The Federal Arbitration Act (FAA) "provides that contractual agreements to arbitrate disputes 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 770-71 (10th Cir. 2010) (quoting 9 U.S.C. § 2)). The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate." *Id.* at 771 (quoting *Glass v. Kidder Peabody & Co.*,

Inc., 114 F.3d 446, 451 (4th Cir. 1997)). The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 3 of the Act, 9 U.S.C. § 3, "obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and Section 4, 9 U.S.C. § 4, authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute." *Id.* (citing *Moses H. Cone*, 460 U.S. at 24-27 (discussing scope and operation of FAA)).

Plaintiff does not dispute that he signed, prior to the start of his employment, a Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), which provided in pertinent part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [Self Regulatory Organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

The SRO specified in Section 4 of plaintiff's Form U-4 is the Financial Industry Regulatory Authority ("FINRA")[1] and plaintiff became a registered representative of FINRA. Plaintiff also signed a separate "Arbitration Disclosure Statement" advising him that the Form U-4 contains a pre-dispute arbitration clause and directing him to that specific provision within the Form U-4. Plaintiff does not dispute that his claims in this case are required under FINRA rules. Rather,

---

[1] FINRA is formerly known as the National Association of Securities Dealers ("NASD").

he contends that the court should not enforce that agreement because arbitration is not an accessible or effective forum in which to determine plaintiff's statutory rights. *See Shankle v. B-G Maintenance Management, Inc.*, 163, F.3d 1230, 1231, 1233-34 (10th Cir. 1999) (agreements requiring arbitration of statutory claims are enforceable if the arbitral forum is an effective and accessible alternative to a judicial one). According to plaintiff, the FINRA arbitral forum is inaccessible because it is potentially cost prohibitive; it is ineffective because FINRA arbitrators may be unqualified to hear employment claims and may not provide the remedies available to plaintiff if he were pursuing his claim in federal court. The court rejects each of these arguments.

In support of his argument that FINRA arbitration is potentially cost prohibitive, plaintiff directs the court to numerous FINRA arbitration rules setting forth various fees to which plaintiff is exposed in the arbitration process, including a $600 filing fee; session fees ranging from $450 to $600 each; potential postponement fees; and stenographer fees. As even plaintiff concedes, the filing fee may be deferred upon a showing of financial hardship; session fees may be attributed entirely to defendants if the panel so determines; postponement fees may be waived entirely by the panel or attributed to defendants; and plaintiff would be required to pay stenographer fees only if plaintiff elects to make a stenographic record of the hearing. Defendants, then, urge that plaintiff's argument that arbitration will be cost prohibitive is entirely speculative.

In support of his argument, plaintiff relies primarily on a district court case from the

District of Colorado, *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338 (D. Colo. July 15, 2011) in which the district court, in an FLSA case, found certain provisions in an underlying arbitration agreement unenforceable on the grounds that the provisions denied the plaintiffs access to arbitration in light of "unbearable" costs. *Id*. at *10. The specific provisions at issue in *Daugherty* required that the plaintiffs pay one-half of the total costs of arbitration in addition to a required filing fee of $4350. *Id*. at *11. Moreover, the arbitration agreement in *Daugherty* required that the prevailing party recover its attorneys' fees from the losing party–even if the defendant was the prevailing party. *Id*. at *10-11. The plaintiffs filed affidavits averring that they were unable to pay the costs associated with arbitration and that they would need to abandon their claims against the defendant if they could be faced with payment of the defendant's attorneys' fees. *Id.* at *10.

Defendants, in turn, rely on *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), a case involving a claim under the Truth in Lending Act and the enforcement of a mandatory arbitration clause. In *Green Tree*, the arbitration agreement under which the defendant sought to compel arbitration did not mention the costs of arbitration and, in opposing the motion to compel, the plaintiff argued that the agreement was thus unenforceable because it failed to "affirmatively protect [her] from potentially steep arbitration costs." *Id.* at 82. The Court held that the agreement's silence on such matters did not render the agreement unenforceable. *Id*. Specifically, the court held that the "risk" highlighted by plaintiff was too speculative:

4

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack . . . information about how claimants fare under Green Tree's arbitration clause." The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

*Id*. at 90-91 (footnote and citation omitted). According to the Court, to "invalidate the agreement on that basis would 'undermine the liberal federal policy favoring arbitration agreements.'" *Id*. at 91 (quoting *Moses H. Cone*, 460 U.S. at 24). Ultimately, the court held that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id*. at 92.

The court concludes that the facts of this case are far more akin to *Green Tree* than *Daugherty*. Unlike the situation in *Daugherty*, it may be that plaintiff here is relieved from the filing fee altogether and that he ultimately pays no other costs. He certainly will not be required (even potentially) to pay defendants' attorneys' fees and there is no mandatory requirement that he pay one-half of the fees of arbitration. Indeed, like *Green Tree*, the record here does not establish that plaintiff will necessarily bear the costs of arbitration. And, like *Green Tree*, while there is some "risk" under the agreement that plaintiff could be "saddled" with the costs of arbitration, defendants are correct that plaintiff has no evidence whatsoever concerning the likelihood that an arbitrator would impose arbitration costs on him or the probable amount of any

such costs. While plaintiff has submitted a declaration under penalty of perjury that the "potential" costs of arbitration "could exceed" his ability to pay, his declaration does not remotely suggest that even the filing fee, if not deferred, would impose a hardship on plaintiff. He has not, then, made the requisite factual showing to support his contention that arbitration is cost prohibitive.

Second, plaintiff contends that the arbitral forum is not effective because FINRA's arbitration rules do not require that arbitrators possess even minimal qualifications such as a law degree or Bar membership; familiarity with the particular substantive area of law; or a minimum number of years of legal experience. Plaintiff's argument, however, is based on a misreading of FINRA's rules. Plaintiff relies exclusively on the definitions of "public arbitrator" and "non-public arbitrator" contained in the "Definitions" section of FINRA's rules. *See* Rule 13100(p) and (u). Looking beyond that section, FINRA's rules provide that plaintiff's claim, based on the amount in controversy, would be heard by one arbitrator, *see* Rule 13401(b), and that the single arbitrator must be a "non-public arbitrator selected from the chairperson roster described in Rule 13400(c)." *See* Rule 13402(a). As described in Rule 13400(c), arbitrators are eligible for the chairperson roster only if they have completed chairperson training provided by FINRA and have a law degree, are a member of a bar of at least one jurisdiction and have served as an arbitrator through award on at least two arbitrations administered by a self-regulatory organization in which hearings were held; or have served as an arbitrator through award on at least three

arbitrations administered by a self-regulatory organization in which hearings were held.[2] FINRA, then, does impose certain qualifications on its arbitrators and plaintiff has provided no evidence to substantiate his concern that FINRA arbitrators lack necessary qualifications to hear claims. The court, then, rejects this argument. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) ("[W]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.").

Third, plaintiff contends that arbitration is not an effective forum because if he were permitted to purse his claims in federal court, he would be entitled to recover his attorneys' fees and costs but FINRA's arbitration rules do not expressly require the panel to award attorneys' fees and costs to a successful claimant. As an initial matter, the court notes that the FINRA rules do not preclude an arbitration panel from awarding attorneys' fees to a prevailing claimant. Rather, the applicable rules are silent on the issue. As defendants concede, however, the FLSA automatically entitles prevailing plaintiffs to attorneys' fees and litigation costs and these substantive rights apply in arbitration as well. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (litigants retain all substantive statutory rights in the arbitral forum); *Porzig v. Dresdner, Kleinwort, Benson, N.A., LLC*, 497 F.3d 133, 136 (2d Cir. 2007) (arbitration panel

---

[2]FINRA requires more specialized qualifications for arbitrators hearing claims of statutory employment discrimination. For those claims, arbitrators must have a law degree; membership in the Bar of any jurisdiction; substantial familiarity with employment law; and ten or more years of legal experience. *See* Rule 13802(c).

required to award attorneys' fees to prevailing claimant for ADEA claims in NASD arbitration); *Delano v. Mastec, Inc*., 2010 WL 4809081, at *5 (M.D. Fla. Nov. 18, 2010) (agreement to arbitrate FLSA claims enforceable and right to recovery fees and costs under FLSA would apply in arbitration); *Koridze v. Fannie Mae Corp*., 593 F. Supp.2d 863, 872 (E.D. Va. 2009) (plaintiff does not forfeit statutory right to attorneys' fees by pursuing arbitration). Thus, because FINRA's arbitration rules do not preclude the panel from awarding attorneys' fees to a successful claimant and plaintiff retains his substantive rights under the FLSA, plaintiff has not shown that the arbitral forum is an ineffective or inaccessible alternative.[3]

Because defendants have shown the existence of an enforceable agreement to arbitrate, and plaintiff has not shown that the arbitral forum is ineffective or inaccessible, the court will direct the parties to proceed to arbitration.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss or stay pending mandatory arbitration (doc. 6) is granted and the parties are directed to

---

[3]Again, the case primarily relied upon by plaintiff is easily distinguishable on this issue. In *Daugherty*, the parties' arbitration agreement contained a provision that the "prevailing party shall be entitled to recover its reasonable attorneys' fees." *Daugherty v. Encana Oil & Gas (USA), Inc*., 2011 WL 2791338, at *2 (D. Colo. July 15, 2011). The agreement, then, contemplated that a prevailing defendant would recover its fees from the plaintiff–something that the FLSA does not contemplate. The district court in *Daugherty*, then, concluded that the attorneys' fees provision was unenforceable because it "substantially thwarts the statutory enforcement scheme erected by the FLSA" and the plaintiffs' affidavits established that they would not be able to pay a fee award if defendant prevailed. *Id*. at *11. No such provision is contained in FINRA's arbitration scheme.

proceed to arbitration on plaintiff's claims. The court will stay the judicial proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than May 17, 2011, concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 18th day of November, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge